IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

LAQUIZE MCMATH,

        Petitioner,

v.                                          11-0881-DRH-SCW

RICK HARRINGTON[1],

        Respondent.

## MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

### Introduction and Background

Pending before the Court is a Report and Recommendation issued by Magistrate Judge Stephen C. Williams (Doc. 29). Both Harrington and McMath filed objections to the Report (Docs. 30 & 33). Based on the record and the applicable case law, the Court **ADOPTS in part and MODIFIES in part** the Report. Further, having closely examined the record, the Court concludes that an evidentiary hearing is not necessary in this matter. It is proper to deny a § 2254 motion without an evidentiary hearing. See 28 U.S.C. 2254(e)(2)("If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that – (A) the claim relies on – (i) a new rule of constitutional law, made

---

[1] McMath is housed at Menard Correction Center. Rick Harrington replaced Michael P. Atchison as the Warden. Thus, Harrington is the proper respondent. *See* Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts; Fed.R.Civ.P. 25(d); *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004).

retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.").

Following a two day jury trial, McMath was found guilty of first degree murder in the shooting death of Larry Townsend in the St. Clair County, Illinois Circuit Court. Following the jury verdict, McMath filed a pro se motion for a new trial claiming that his counsel was ineffective for failing to subpoena his brother as an alibi witness and for failing to call three other individuals, Donald Driver, Myron McCoyed and Dearlise Hudson, who would claim that they were at the shooting and that McMath was not the shooter. His pro se motion did not contain any affidavits from McMath or the alleged witnesses. On July 17, 2007, the trial court held a hearing on the pro se motion. The trial court asked McMath's counsel to explain his rationale for not calling those witnesses. Counsel explained that he had spoken to McMath's brother but thought "it would be a risky proposition" for McMath to call him as a witness, given his refusal to testify. As to the other witnesses, McMath's counsel explained that he made efforts to contact them, but they were not included in the witness report and he did not have the addresses. McMath's counsel further explained that the witnesses he could reach were not willing to talk about the case. The trial court denied McMath's pro se

motion. That same day, the trial court sentenced him to thirty-two years imprisonment.

He then unsuccessfully appealed his conviction on the ground that his counsel was ineffective for failing to call his brother and the other witnesses identified in his motion. *People v. McMath*, No. 5-07-0496 (Ill. App. Ct. April 25, 2008) (Doc. 21-1). The Fifth District, Illinois Appellate Court set forth the evidence at trial as the following:

> On May 8, 2006, several individuals were gathered near a public housing project in Centerville, Illinois. Terrance Wells, his cousin Travis Wells, and Gary Bailey all testified for the State. They positively identified the defendant as being at the scene of the shooting with a handgun. Terrance Wells testified that the defendant first told the crowd to move back and then fired a shot into the ground. He then told the victim that he had until the count of 10 to leave the area, started counting, and fired several more shots, causing the victim to run. Gary Bailey stated that he ran off around a building when defendant started counting, and then heard shots. He saw the victim running in the same direction, saying that he had been hit or shot. The victim later died as a result of a gunshot wound in his back. The defendant testified as his only witness, claiming to have been with his brother, Shaun Kyles, in Saint Louis, Missouri, at the time of the shooting.
> After the verdict, the defendant filed a *pro se* motion for new trial, claiming ineffective assistance of counsel for failing to subpoena his brother as an alibi witness and not calling three other individuals who allegedly had been at the scene of the shooting. This *pro se* motion was not accompanied by any affidavits. The trial court conducted a hearing on the motion and, after hearing from both the defendant and his counsel, denied the same. In denying the motion, the court apparently found that not calling Shaun Kyles was a matter of trial strategy because of his reluctance to testify and the other witnesses were unable to be located and would not be helpful to the case.

*Id.* at Doc. 21-1, p. 2. The Appellate Court concluded that trial counsel had made a reasonable strategic decision not to call witnesses that either could not be

located or had testimony that was potentially "risky" to McMath's case. Further, the Appellate Court held that McMath's claim of ineffective assistance of counsel was without merit as "there is nothing in the record by way of affidavits or posttrial motion testimony for this court to determine whether the proposed witnesses could have provided any information or testimony favorable to the defendant; therefore, the second prong of *Strickland* cannot be met. See *Penrod*, 316 Ill. App. 3d at 723."

Subsequently, McMath filed a petition for leave to appeal ("PLA") in the Illinois Supreme Court. This PLA contained the same arguments regarding ineffective assistance of counsel. *People v. McMath*, No. 107233. On November 26, 2008, the Illinois State Supreme Court denied the PLA.

On May 22, 2009, McMath filed a postconviction petition pursuant to 725 ILCS 5/122-1 *et seq.* in the St. Clair County, Illinois Circuit Court. McMath again reiterated his argument that his trial counsel was ineffective for failing to call alibi witness at trial. He claimed that, if called, his brother would have testified that McMath was in St. Louis at his brother's house at the time of the shooting. McMath also claimed that his mother would have testified that she dropped him off in St. Louis before the shooting and picked him up in St. Louis after the shooting. In support, McMath submitted affidavits from himself and his mother. On June 1, 2009, the trial court dismissed the petition as "frivolous and patently without merit" and to be devoid of a "gist of a valid constitutional claim." The trial court found that McMath failed to provide affidavits supporting his

allegations as to any of the testimony except for his mother and that his mother's affidavit was insufficient to rule out the possibility that McMath had committed the crime in between the times she saw him.

McMath appealed the trial court's decision repeating the ineffective assistance of counsel arguments. On December 3, 2010, the Appellate Court affirmed. *People v. McMath*, No. 5-09-0296 (Doc. 21-10). The Appellate Court found that any argument pertaining to this had been forfeited because it could and should have been raised in McMath's direct appeal, noting that McMath knew immediately after trial that counsel had not called his mother as a witness and that the claim did not depend on facts that were outside the record. *Id*. McMath filed a PLA with the Illinois State Supreme Court raising the same arguments that he raised in his appeal. On March 30, 2011, the Illinois State Supreme Court denied the PLA. *People v. McMath*, No. 111777.

Thereafter, on September 28, 2011, McMath filed this petition for habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). In this petition, McMath raises the following grounds for relief:

> Ground 1: trial counsel was ineffective for failing to call two alibi witnesses and three eyewitnesses; and
>
> Ground 2: Illinois' procedure for post-conviction relief is inadequate and violates his due process.

On January 29, 2014, Magistrate Judge Williams issued the Report (Doc. 29). The Report recommends that the Court deny and dismiss with prejudice McMath's 28 U.S.C. § 2254 petition. Specifically, the Report rejected

respondent's argument that McMath's ineffective assistance of counsel claim as to his mother was not defaulted and the Report proceeded to a discussion of the merits of that claim. The Report also found: "[h]ad the Illinois state courts decided the *Strickland* issue on deficient performance prong alone, this would have been an unreasonable application of *Strickland* under *Sitts* because it failed to consider the adequate investigation angle of Petitioner's claims. However, state court's decision as to the prejudice prong is a reasonable application of *Strickland*." Lastly, the Report rejected McMath's claim that the Illinois' Post-Conviction Remedy is inadequate.

Since timely objections have been filed, this Court must undertake *de novo* review of the Report. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); Southern District of Illinois Local Rule 73.1(b); *Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). The Court may "accept, reject or modify the recommended decision." *Willis v. Caterpillar Inc.*, 199 F.3d 902, 904 (7th Cir. 1999). In making this determination, the Court must look at all the evidence contained in the record and give fresh consideration to those issues to which specific objection has been made. *Id.*

### Standard

The Anti-Terrorism and Death Penalty Act of 1996 ("AEDPA") allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §

2254(a). Before considering the merits of a habeas petition, a federal court must ensure that the petitioner has exhausted all available state remedies and fairly presented all of the claims in his habeas petition to the state courts. *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004); *Spreitzer v. Schomig*, 219 **F.3d** 639, 644 (7th Cir. 2000). A petitioner is required to bring his claim(s) through "one complete round of the State's established appellate review process" because "the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728 (1999), *see also* 28 U.S.C. §2254(c). Under the Illinois two-tiered appeals process, petitioners must fully present their claims not only to an intermediate appellate court, but also to the Illinois Supreme Court, which offers discretionary review in cases such as this one. *Id*. at 843-846.

Similar to the exhaustion doctrine is the procedural default. *Perrequet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). When a habeas petitioner has failed to fairly present to the state court the claim on which he seeks relief in federal court, and the opportunity to raise that claim in state court has passed, the petitioner has procedurally defaulted that claim. *Id.* The procedural default doctrine is subject to two equitable exceptions: a procedural default will bar a federal court from granting habeas relief unless (1) the petitioner demonstrates cause for the default and prejudice resulting therefrom, or (2) he convinces the court that a miscarriage of justice would result if his claim was not entertained on the merits.

*Badelle v. Correll*, 452 F.3d 648, 661 (7th Cir. 2006); *Perrequet*, 390 F.3d at 514.

A federal habeas court's role in reviewing state prisoner applications was modified by AEDPA "in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Under AEDPA, federal habeas relief is barred for any claim adjudicated on the merits in state court, "unless one of the exceptions listed in 28 U.S.C. §2254(d) obtains." *Premo v. Moore*, 131 S.Ct. 733, 739, 178 L.Ed.2d.649 (2011). A district court must assess the decision of the last state court to rule on the merits of the claim. *Simpson v. Battaglia*, 458 F.3d 585, 592 (7th Cir. 2006). Further, "[u]nder AEDPA, it is a state court's resolution of an issue, as opposed to its reasoning process, that must be treated with deference." *Hough v. Anderson*, 272 F.3d 878, 897, n.7 (7th Cir. 2001), *citing Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir.1997) (the state court resolution need not be well reasoned, rather, the standard is "whether the determination is at least minimally consistent with the facts and circumstances of the case.")

Under 28 U.S.C. §2254(d), habeas relief is denied unless the adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court hearing." A judgment is "contrary to" Supreme Court precedent if the state court made a statement of law inconsistent with one made by the Supreme Court, or if the state court decided

differently from the Supreme Court a case with "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring). A state court decision is an "unreasonable application of" clearly established law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* The Seventh Circuit has noted that the scope of federal review on habeas is "strictly limited," and that the unreasonable application standard is "a difficult standard to meet." *Jackson v. Frank*, 348 F.3d 658, 661-662 (7th Cir. 2003).

In the absence of stated reasoning by the state court, or even where there has been a summary denial, a federal habeas court still must determine what arguments or theories supported—or could have supported—the state court decision. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1402 (2011), *citing Harrington v. Richter*. 131 S.Ct. 770, 786 (2011). Once these arguments or theories have been identified, then a habeas court "must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with [Supreme Court precedent]." *Id.* This is an objective inquiry. When there is no possibility fairminded jurists could disagree that the state court's decision conflicts with Supreme Court precedents, then the writ may issue. *Id.* In other words, even where a state court fails to state its reasoning, the habeas petitioner's burden must still be met by showing there was no reasonable basis for the state court to deny relief. *Harrington*, 131 S.Ct. at 784 (2011).

Analysis under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984)—the Supreme Court precedent at issue here—and habeas review under § 2254 are both highly deferential. And when, as here, both apply, the review is "doubly" deferential. *Harrington*, 131 S.Ct. at 788. *Strickland* requires that a petitioner on an ineffective assistance of counsel claim must prove 1) that counsel's performance "fell below an objective standard of reasonableness" ("the performance prong"), and 2) "that the deficient performance prejudiced the defense" ("the prejudice prong"). *Strickland*, 466 U.S. at 688, 692. In order for the writ to issue, a habeas petitioner must satisfy both prongs of the *Strickland* analysis. However, there is no mandatory order for the analysis, and a habeas Court does not even need "to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

Under *Strickland's* performance prong a Court examines "the objective reasonableness of counsel's performance." *Harrington*, 131 S.Ct. at 790. "*Strickland* does not guarantee perfect representation, only a 'reasonably competent attorney.'" *Id.* at 791, *quoting Strickland*, 466 U.S. at 687. The reasonableness of counsel's challenged conduct is judged on the facts of the particular case, "viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. There is a strong presumption of adequate assistance and the exercise of reasonable professional judgment to avoid the temptation to second-guess counsel's assistance. *Id.* at 689. There is also a strong presumption "that counsel's attention to certain issues to the exclusion of others reflects trial tactics

rather than 'sheer neglect.'" *Harrington*, 131 S.Ct. at 790, *quoting Yarborough v. Gentry*, 540 U.S. 1, 8 (2003). And, of particular import to the petition at bar, *Strickland* has not enacted a rigid formula requiring for every prosecution witness an equal and opposite witness from the defense. *Id.* at 791. Indeed, a petitioner's right to effective assistance of counsel is violated only when counsel's conduct, in light of all the circumstances, "[was] outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Under *Strickland's* prejudice prong, a petitioner must show that, but for counsel's deficient conduct, "it is 'reasonably likely' the result would have been different. *Harrington*, 131 S.Ct. 791-92. "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 792. So, with respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.[2] Ultimately, "[t]he focus of the *Strickland* test for prejudice ... is not simply whether the outcome would have been different; rather, counsel's shortcomings must render the proceeding fundamentally unfair or unreliable." *Gray v. Hardy*, 598 F.3d 324, 331 (7th Cir. 2010).

---

[2] *Strickland's* prejudice standard "does not require a showing that counsel's actions 'more likely than not altered the outcome.'" *Harrington*, 131 S.Ct. 791-92, *quoting Strickland*, 466 U.S. at 693, 697. However, practically speaking, the difference between *Strickland's* reasonable probability standard and a "more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Id.*

In summary, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process such that the trial cannot be relied on has having produced a just result." *Strickland*, 466 U.S. at 686. However, "[w]hen § 2254 applies, the question is not whether counsel's actions were reasonable ... [but] whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 131 S.Ct. at 788. In other words, when treated with the latitude and deference mandated in the habeas context, was the state court's resolution of the ineffective assistance claim reasonable?

Respondent objects to the Report finding no procedural default and proceeding to discuss the merits of the McMath's claim that counsel was ineffective for not calling his mother as an alibi witness. Respondent maintains that the Court should defer to the state court's resolution of this issue in his ineffective assistance claim on state procedural grounds and find it procedurally defaulted. After reviewing the record, the Court agrees with respondent.

It is the role of a federal court on habeas review to defer to a state court's determination that its own procedural rules were violated, not second guess it. *See Thomas v. McCaughtry*, 201 F.3d 995, 1000 (7th Cir. 2000). In habeas matters, principles of federalism command that a federal court not substitute its interpretation of state law for that of a state court. *See George v. Smith*, 586 F.3d 479, 484 (7th Cir. 2009). Here, the state court found that McMath, on state postconviction review, forfeited his claim that counsel was ineffective for not

calling his mother when he failed to raise it on direct appeal. Thus, the Court defers to the state court's resolution of McMath's ineffective assistance of counsel claim as it relates to not calling his mother as an alibi on state procedural grounds and finds that it is procedurally defaulted. *See Smith v. Gaetz*, 565 F.3d 346, 351 (7th Cir. 2009)(ineffective assistance of counsel claim based on failure to call an alibi witness procedurally defaulted due to state court ruling that petitioner waived it by failing to raise it on direct appeal). Forfeiture constitutes an independent and adequate state ground for the state court's decision that bars this Court's review of the merits of this portion of petitioner's claims. *See Gomez v. Jaimet*, 350 F.3d 673, 677-78 (7th Cir. 2003); *Whitehead v. Cowan*, 263 F.3d 708, 726-27 (7th Cir. 2001). Thus, the Court modifies the Report as to this issue. Further, the Court denies as moot McMath's objection to the Report's finding that McMath's ineffective assistance of counsel claim as to not calling his mother failed because McMath did not show sufficient prejudice.

Further, respondent contends that the Report "incorrectly suggests that the state court's determination that counsel did not perform deficiently was unreasonable, asserting that the state courts did not consider whether counsel's investigation of alibi witnesses and eye witnesses was reasonable." Respondent contends that the trial court did consider the reasonableness of counsel's investigation. Based on the record, the Court again agrees with respondent.

The following colloquy took place on the record July 17, 2007 before the trial court:

THE COURT: People of the State of Illinois vs. McMath. Mr. McMath is present, as well as his attorney, Mr. Wilson, Mr. Sallerson for the State. The first issue I think we need to address, gentlemen, unless somebody disagrees is Mr. McMath's post-trial pro se motion for – well, in essence, I'm interpreting this as a motion of ineffective assistance of counsel. Since he has an attorney, he is not able to file a post-trial motion.

In addition, I will note that Mr. McMath indicates in his motion that it's really not his motion, that he's hired another lawyer, a jailhouse lawyer, to do it for him, which is an illegal practice in the State of Illinois. And I will also note that in that this other lawyer, but McMath by his signature, alleges that he is mentally retarded and unable to be competent to stand trial. Interesting that in this -- in this same motion that he alleges all these issues, that he also alleges that he can't understand what he was doing. I'll also note for the Appellate Court's benefit that Mr. McMath has on a number of occasions addressed the Court, most recently on his desire to testify, and I found his mental abilities to be more than adequate, in fact, intelligent, and that there was no indication throughout the trial that he was mentally incompetent or even mildly retarded.

So, I'm going to ignore that portion of his motion or find that it is -- rather than to ignore it, find that it doesn't rise to a level that needs to be addressed by the Court. But I will address the issue about the competency of counsel.

So, with that, Mr. McMath, do you want to add anything to what you have included in your motion?

THE DEFENDANT: No, sir.

THE COURT: Mr. Wilson do you want to respond to the allegations against you?

MR. WILSON: Your honor, by reading the motion, I -- and in talking with my client, my client feels I should have called additional witnesses to testify about the arrest of the day. I made a personal decision that those witnesses would not be helpful to the case. It's -- since there was a guilty verdict in the case, I -- you know, there's a -- I think it's easy to say that there could have been different ways to try the case. I felt -- Apparently, the witnesses that my client wanted me to call were witnesses who claim to have observed the shooting, and they would according to my client testify that he was not the person who did the shooting.

They did not show up in the witness report. I didn't have really an address or any means of contacting any of these people. So, that's the reason I didn't call them as witnesses.

THE COURT: Did you make an effort, Mr. Wilson, to find addresses?

MR. WILSON: I did make an effort to try and find addresses.

THE COURT: Mr. McMath, did you have -- certainly you had names.  Did you have any other information that you gave to Mr. Wilson how to find these witnesses?

THE DEFENDANT: I told him that two of the addresses was [sic] located in my motion of discovery.

THE COURT: Your motion for discovery?

THE DEFENDANT: Yes.  It's not on the motion that I filed pro se but it's in my motion of discovery.

MR. WILSON: I think that he's saying that it's in the discovery we received from the State's Attorney.

THE COURT: And, Mr. Wilson, did you go through the paperwork?

MR. WILSON:  Yes, sir.

T     HE COURT: And were those – was the information that was in the discovery sufficient for you to find those witnesses?

MR. WILSON: No, sir.

THE DEFENDANT: In the motion of discovery, one of the –

THE COURT: I'm sorry.

THE DEFENDANT: Excuse me, sir.  In the motion of discovery, one of the addresses was labeled as Linda Hudson (sp), which is her son, Dearlous Hudson (sp), and the other address is labeled as a person who didn't want to give their name, and that's Donald Driver (sp).

THE COURT: And did you use that information in an attempt to get witnesses, Mr. Wilson?

MR. WILSON: No, sir.

THE COURT: Was that -- you know, I obviously don't know and prior to this motion it was none of my business --Let me ask you, why?

MR. WILSON: Well, I tried to contact the witnesses which were on the list, and --

THE COURT: Okay.

MR. WILSON: -- I couldn't -- couldn't locate anyone willing to talk about this, and I could not locate those witnesses.

THE COURT: How about -- Is it -- Is my understanding correct that Mr. Kyles is related to Mr. McMath?

MR. WILSON: Yes, it is his brother.

THE COURT: And did you make an attempt to -- Mr. Kyles would not have been in the discovery, correct?

MR. WILSON: Yes, that's correct.

THE COURT: Did you attempt to contact Mr. Kyles?

MR. WILSON: Yes.  In fact, I did contact him.

> THE COURT: And Mr. Kyles did not voluntarily consent to testify, I take it?
>
> MR. WILSON: That's correct.
>
> THE COURT: Was it your professional opinion, Mr. Wilson, that calling Mr. Kyles in his adverse state of mind would be positive or negative for your client?
>
> MR. WILSON: I think that it would be a risky proposition for my client.
>
> THE COURT: Mr. Sallerson, any position by the State?
>
> MR. SALLERSON: No, Your Honor, I think that the Court has done the cursory review to determine if there was any need to appoint additional counsel; and based on Mr. Wilson's testimony as well as -- or his statements to the Court, it appears that he contacted the witnesses he was able to do so – that he was able to contact, and I believe his testimony was trial strategy with regards to Mr. Kyles. So, I do not believe there is any merit to this pro se post-trial motion.
>
> THE COURT: Mr. McMath, anything else you want to add?
>
> THE DEFENDANT: No, Sir.
>
> THE COURT: Okay.  Well, on -- Pursuant to those comments, Mr. McMath, I'm going to deny your motion on today's date.  By having raised it, you preserve it for appeal, and you can raise those issues with the Appellate Court if you wish. …

(Doc. 21-6 ps. 114-120).  Furthermore, the Appellate Court agreed with the trial court on this issue finding:

> A complete review of the record in this case reveals that defendant has failed to establish either prong of the *Strickland* test.  The defendant was required to show that his trial counsel's performance was deficient and that as a result, there is a reasonable probability that he was prejudiced to the point that it affected the jury's verdict.  At best, the defendant's argument is grounded upon conclusory and speculative allegations.  These decisions regarding what witnesses to call cannot support a claim of ineffective assistance of counsel.  See *People v.* Griffin, 178 Ill. 2d 65, 86 (1997). "[T]he decision of whether to call a witness is a tactical and strategic decision, and defense counsel is given wide latitude in making those decisions." *People v. Penrod*, 316 Ill.App. 3d 713, 724 (2000)(citing *People v. Flores*, 128 Ill. 2d 66, 85-86 (1989)).  In the case at bar, trial counsel surmised that calling defendant's brother, Shaun Kyles, would be a 'risky proposition,' and counsel chose not to subpoena him.  This was clearly a matter of strategy.  The other three potential witnesses, according to trial counsel, could not be located.  Furthermore, there is nothing in the record by way of affidavits or posttrial motion

> testimony for this court to determine whether the proposed witnesses could have provided any information or testimony favorable to the defendant; therefore, the second prong of *Strickland* cannot be met. See *Penrod*, 316 Ill. App. 3d at 723."

(Doc. 21-1, p.3). Clearly, the state courts examined the issue and found that counsel's performance was not deficient. The Court concludes that the state courts' resolution of this issue reasonable. *See United States v. Lathrop*, 634 F.3d 931, 938-39 (7th Cir. 2011)(it is reasonable for counsel to decline fruitless investigations); *United States v. Farr*, 297 F.3d 651, 658 (7th Cir. 2002). Thus, the Court modifies the Report in as to this issue.

Closely related to the issue discussed above, is McMath's objection to the Report finding that the state court's decision was a reasonable application of the prejudice prong of *Strickland*. McMath still contends that counsel was ineffective for failing to investigate the alibi witnesses and the witnesses contained in his motion. The Court rejects this argument and finds that McMath has not presented anything new to support this argument. His objection merely takes umbrage with the Report's conclusion and the state court's conclusions regarding the same. McMath failed to establish prejudice from his lawyer's actions. He has not submitted any affidavits from his proposed witnesses. While he claims that these witnesses would testify that he was not the shooter, he never submitted any affidavits or any other type of evidence to the state court on this point. Moreover, he never submitted his brother's affidavit. The only evidence that he submitted was his mother's affidavit, which stated that she dropped him off in St. Louis before the shooting and picked him up in St. Louis after the shooting. The trial

judge noted that this was not sufficient enough as to the time of the crime to create an alibi. It is not reasonably probable that this testimony could have changed the outcome of the trial. In fact, during the trial, the state presented three eyewitnesses who testified that McMath was the shooter. Based on the record, the Court finds that the state courts did not unreasonably apply the prejudice prong of *Strickland* in this matter.

Next, McMath asserts that the Report misconstrued his claim that the Illinois' post-conviction remedy is inadequate. McMath now asserts that his argument as to this issue is "the state reviewing courts unreasonably rejected his 6th Amendment claim." The Court agrees with the Report's conclusion on this issue. It appears that McMath is rehashing the same arguments regarding his case that have been repeatedly rejected and denied by several courts.

Lastly, the respondent objects to the Report's recommendation of granting a certificate of appealability on petitioner's ineffective assistance claim. McMath separately moved for certificate of appealability on all of his claims (Doc. 34). Based on the following, the Court **DECLINES** to issue a certificate of appealablity in this matter and modifies the Report in this aspect as well.

When the Court enters a final Order adverse to the applicant for relief under § 2254, the Court must also issue or deny a certificate of appealability. Rule 11 of the Rules Governing Section 2254 Cases. A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The standard for making a

"substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (internal quotations omitted)(citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n. 4 (1983)). If the Court issues a certificate of appealability, it must indicate on which specific issue or issues the petitioner has satisfied the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3).

Here, the Court concludes that no certificate of appealability shall issue. Petitioner has not made a substantial showing of the denial of a constitutional right. The conclusory allegations of his petition are belied by the evidence contained in the record.

## Conclusion

Accordingly, the Court **ADOPTS** in part and **MODIFIES** in part the Report (Doc. 29). The Court **DENIES** and **DISMISSES with prejudice** McMath's 28 U.S.C. § 2254 petition. Further, the Court **DECLINES** to issue a certificate of appealability and **DENIES** McMath's application for certificate of appealability from the district court (Doc. 34). The Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same.

**IT IS SO ORDERED.**

Signed this 7th day of August, 2014.

Digitally signed by David R. Herndon
Date: 2014.08.07 15:25:32 -05'00'

**Chief Judge**
**United States District Court**